(16 Misc. Rep. 278.)

### FERNSCHILD v. D. G. YUENGLING BREWING CO.

(City Court of New York, General Term.   March 16, 1896.)

CONTRACT—CONSTRUCTION—ASSUMPTION OF INDEBTEDNESS.

A new corporation, formed as a reorganization of another, adopted a resolution authorizing the purchase of certain property of the old company, to be paid for by the assumption of its debts. The resolution was carried out, and a bill of sale taken, which recited the consideration to be the assumption by the new company of all the debts of the old except its bonds. A holder of bonds brought an action against the new company to recover thereon, on the ground that their payment was assumed by its resolution. *Held*, that the obligation of the new company was created by its purchase, and not by the preliminary resolution, and was measured by the terms of the bill of sale, and, it appearing that it was not the intention to assume payment of the bonds, it could not be held therefor.

Appeal from trial term.

Action by William Fernschild against the D. G. Yuengling Brewing Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before FITZSIMONS, CONLAN, and O'DWYER, JJ.

Forster, Hotaling & Klenke, for appellant.

Samuel Untermyer and Moses Weinman, for respondent.

CONLAN, J.   The action was brought to recover the amount of two bonds and interest, executed by the D. G. Yuengling, Jr., Brewing Company, the predecessor of the defendant, and which plaintiff claimed this defendant had assumed and agreed to pay. The defendant denied that it assumed them. The bonds sued upon are two of an issue of $1,258,000 of bonds, all of which had been secured by a so-called deed of trust or mortgage, pledging the plant and all of the real property of the brewing company as security for their payment. Besides this trust deed or mortgage, there were prior mortgages, aggregating $302,213.72, so that the trust deed was, in effect, a second or junior mortgage lien. It appears there were numerous defaults in the payment of interest upon the mortgage bonds, and the trustee foreclosed the mortgage, and a sale was had under the decree of foreclosure in September, 1893, and the property covered by the mortgage was bid in for the sum of $20,000 over and above the amount of prior liens, in behalf of a committee of the bondholders, who were desirous of affecting a reorganization of the company. All of the bondholders were invited to join in the plan of reorganization, and, out of the total of $1,258,000 bonds issued, $1,202,800 were brought into the reorganization. The non-

assenting bondholders followed the proceeds of the foreclosure sale, and took their pro rata share of the purchase money. The plaintiff was not a party to the reorganization, and received the full share to which he was entitled from the proceeds of sale. The plaintiff says the reorganization committee, in its plan, provided for the assumption and payment of such bonds as should be held by the signers thereof in the bonds and stock of the new company, and this appears to have been carried out on the following basis, i. e. the assenting bondholders took new bonds to the extent of 75 per cent. of the face value of the surrendered bonds, and the remaining 25 per cent. of their face value in the stock of the new company. The plan of reorganization also provided that "the bonds undistributed may be sold by the committee, or used by them for the purpose of borrowing money with which to pay nonassenting stockholders the distributive share to which they may be entitled out of the proceeds of the sale of the property of the company." The former company was possessed of other property, not covered by the trust deed or prior mortgages, aggregating many thousands of dollars, which the new company proposed to and did subsequently acquire by bill of sale, which is more particularly referred to and discussed hereafter, with the intention, as declared in a resolution, adopted at the reorganization meeting on December 27, 1893, "that this company shall in all respects stand in the place and be the successor of and so far as may be the same corporate body as the D. G. Yuengling, Jr., Brewing Company aforesaid." In addition to the indebtedness of $302,213.72, secured by a prior mortgage, and of the bonded indebtedness of $1,258,000, secured by the deed of trust, there were also unsecured debts to the amount of nearly $200,000, as appears by the minutes of the meeting of December 27, 1893. It was the declared purpose of the new company to provide for all of this existing indebtedness in the manner hereinbefore detailed. The plaintiff admits that the agreement of reorganization did not provide for the assumption of his bond, debt, or obligation, and also that he received his share of the proceeds of the sale of the mortgaged premises, including interest; but he claims, and seeks to maintain, that the indebtedness to him was assumed by the defendant in a certain resolution, adopted at the meeting above referred to; and it is upon this resolution that he chiefly relies for a recovery herein. The resolution is as follows:

"Resolved, that this company assume all the debts, obligations and liabilities of every kind and description of the D. G. Yuengling, Jr., Brewing Company, in addition to the bonds and other obligations mentioned in the agreement of reorganization, and thereby provided to be assumed by this company, and that, in return for, and as a consideration of, the assumption of said debts, obligations, and liabilities, this company accept from said D. G. Yuengling, Jr., Brewing Company the bill of sale presented by the chairman, transferring unto this company all the personal property, effects, and chattels of every kind, including the stock in trade, book accounts, and good will of said D. G. Yuengling, Jr., Brewing Company, not included in the property covered by the trust mortgage given by said company to the Farmers' Loan & Trust Company, to secure bondholders, and not heretofore acquired by this company; the intent hereof being to vest in this company all the property, right, fran-

chises, privileges, and good will of the old company, and to assume all the obligations and debts of that company, so that this company shall in all respects stand in the place and be the successor of so far as may be the same corporate body as the said D. G. Yuengling, Jr., Brewing Company."

It is conceded that this resolution, within the construction and limitation put upon it by the defendant, became binding upon the new company.    At the same meeting a bill of sale, as contemplated by said resolution, and bearing date on the same day, was prepared and executed, and by its terms transferred all of the property referred to in the resolution to the defendant, and the same contained the following provision and limitation:

"And the party of the second part [defendant] doth hereby covenant and agree that, in consideration of said transfer as aforesaid, it will assume, and doth assume, the payment of all the debts and obligations of the party of the first part [the former company], excepting the mortgage bonds of said party of the first part, and excepting all other indebtedness otherwise provided for in a certain plan or agreement of reorganization of the said party of the first part, pursuant to the terms of which the party of the second part was organized."

A schedule is annexed to this paper, containing a description and enumeration of the property intended by it to be transferred. On these two instruments, the resolution and the bill of sale, hang all the law, if not the profits, of the case at bar.

We have shown, at some length, that the plan of reorganization comprehended and provided for the assumption and redemption of the bonds of assenting holders in the proportion of 75 per cent. of their face value in the bonds of the new company, and 25 per cent. of their face value of the stock of the new company; that the nonassenting bondholders, including the plaintiff, followed the proceeds of sale, and received their proportionate share thereof, and that the committee had otherwise provided for them by the pledge of the undistributed bonds or the sale of so much thereof as should be necessary for that purpose, and that the steps taken by the committee, down to the point of the adoption of the resolution in question, had mainly to do with the bonded indebtedness, and making provision for the redemption of the outstanding bonds of assenting holders, and also providing for the nonassenting bondholders in the way described, and this appears to have been done before the adoption of the resolution.    The resolution might, therefore, well be said to have reference solely to the acquiring title to and possession of the remaining property of the old company by an instrument of transfer which should also provide for the disposition of the proceeds, or, as in the case at bar, by the assumption of certain debts and obligations referred to therein, and which, by the very terms of the instrument itself, did not include any of the mortgage bonds of the old company, whether of assenting or nonassenting holders, for that class of debts was expressly excepted from the operation of the instrument of transfer.    The resolution, in the light of all that preceded it at the meeting, was itself but preliminary to the bill of sale, which it expressly referred to and mentioned, and that paper, when executed, was to become and be the controlling in-

strument, so far as there was any declaration therein of its intent, purpose, or meaning, and it was necessary that some such paper, or some paper, should be executed in order to give any legal effect whatever to the resolution which had been adopted having in contemplation the execution of a subsequent instrument of transfer. The words, "in addition to the bonds and other obligations," in the resolution, could not, therefore, have been intended to have any other 'or different signification than if the expressions "besides," "other than," or like terms, had been employed, because the outstanding bonded indebtedness had been otherwise provided for; and we do not think that the plaintiff will for a moment contend that the committee, under any plan of reorganization, contemplated the payment of nonassenting holders in full or in cash, when assenting holders were to receive a percentage of new bonds, and new stock amounting, together, to only the face value of the old bonds surrendered.

Indeed, the plaintiff, in his complaint, says "that the agreement of reorganization referred to in said resolution did not provide for the assumption, by this defendant, of the bond, debt, or obligation held or owned by this plaintiff," and he does not pretend that it did any more for any other bondholder.    He seeks to draw from the resolution what?    Not an inference that assumption of the old bonds was intended by the committee, but merely that certain language employed, viz. "in addition to," necessarily included the old bonds, whether the committee so intended them or not, and that, therefore, they were bound by it.    But, even then, the plaintiff has gone only half of the journey.    The resolution authorized the execution of a bill of sale, and until that paper was executed there was no legal liability of the defendant to do anything.    If the old company did not execute the bill of sale, the defendant got nothing; and if it got nothing, it would have assumed no obligations. When, therefore, the bill of sale was executed, we find exactly what was meant to be conveyed, and what was intended the purchaser should assume, and did assume; and that paper, as we have seen, expressly excepted the mortgage bonds.

We have given careful consideration to the argument presented in the very elaborate brief for the appellant, but have not found anything therein which has seemed to warrant an interference with the judgment recovered.    The plaintiff has not been misled by anything which has occurred in the departure of the old company and the arrival of the new.    He did not see fit to assent to the proposition which was accepted by $1,202,800 in interest of the $1,258,000 outstanding bonds, but chose rather to follow the proceeds of sale. The market value of the securities is not given in evidence, and we are not even prepared to say whether he has been the loser or not; and the pecuniary value of the plaintiff's interest does not otherwise appear than as an alleged balance claimed to be due him after receiving and accepting all that he said he was entitled to of the proceeds of sale.    If anything further were necessary to show what was intended to be covered by the resolution, it is to be found

in the committee's report, which was adopted at the same meeting, and specifically enumerated the debts which were to be assumed, while the bill of sale expressly excepted the mortgage bonds.

For the reasons stated, we think the judgment appealed from should be affirmed, with costs. All concur.